# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHYNEECE ASBERRY, on behalf of herself and those similarly situated, | Case No. |
| Plaintiff, | |
| v. | Class Action Complaint |
| USALLIANCE FEDERAL CREDIT UNION DBA USALLIANCE FINANCIAL, | **JURY TRIAL DEMANDED** |
| Defendant. | |

2

Plaintiff Shyneece Asberry files this action on behalf of herself and on behalf of all others similarly situated and alleges as follows upon personal knowledge with respect to Plaintiff's own acts and based upon information and belief as to all other matters.

## NATURE OF THE CASE

1. Plaintiff brings this action on behalf of herself and all others similarly situated arising from Defendant USAlliance Federal Credit Union dba USAlliance Financial's ("Defendant" or "USAlliance") practice of collecting and failing to refund unearned fees from Guaranteed Asset Protection Waiver Addendums ("GAP Waiver Addendum") in breach of its contracts with consumers.

2. Under the terms of its contracts with consumers, USAlliance is required to refund to consumers all unearned fees for GAP Waiver Addendums when consumers pay off their automobile finance agreements early.

3. In breach of that promise, and in contravention of state statutes, USAlliance, as a matter of policy, fails to refund consumers unearned fees when finance agreements terminate early.

4. As a result of this practice, USAlliance knowingly collects and retains millions of dollars per year in unearned fees from automobile purchasers.

5. USAlliance's policy and practice of retaining these unearned fees related to GAP Waiver Addendums when the underlying automobile loan is paid off early constitutes a breach of contract, unjust enrichment, and a deceptive business practice in violation of the Pennsylvania's Unfair Trade Practices & Consumer Protection Law and New York's General Business Law.

6. Plaintiff, on behalf of herself and the Class, seeks to end USAlliance's practices and force it to refund unearned GAP fees. Plaintiff seeks damages, restitution, and injunctive relief on behalf of the general public.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one of the defendants, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

8. Venue is proper in this district under 28 U.S.C. § 1391 because USAlliance is subject to personal jurisdiction here and regularly conducts business here, and because a substantial part of the events giving rise to Plaintiff's claims asserted herein occurred in this judicial District.

**PARTIES**

9. Plaintiff Shyneece Asberry resides in Reading, Pennsylvania and did at all relevant times during the conduct alleged in this Complaint.

10. Defendant USAlliance Federal Credit Union, dba as USAlliance Financial, is based in 411 Theodore Fremd Ave. Suite 350, Rye, New York 10580.

**FACTUAL ALLEGATIONS**

**A.  GAP Waivers**

11. If a consumer gets into accident and their car is deemed a "total loss," or if a consumer's car is stolen, the amount the consumer owes on their car loan may end up being more than the amount the insurance company is willing to pay for the consumer's loss. This difference between what an insurer is willing to pay and what the consumer still owes is known as the "gap."

12. For both consumers and creditors, the risk that a consumer will not be able to cover the "gap" often makes financing untenable. Enter GAP products. GAP products allow consumers to cover the "gap" between the amount owed to the creditor and the proceeds from the insurance

policy.

13. GAP products were first introduced in the 1980s and have become increasingly popular over time. There are generally two types of GAP products. The first is GAP insurance. GAP insurance is a contract between an insurance company and a consumer, in which the insurer agrees to cover the consumer's GAP in the event of a total loss of the vehicle. With GAP insurance, if a total loss occurs and the current value of the vehicle is worth less than the amount owed to the creditor, then the insurance company will pay the creditor the difference. In other words, the insurance company is paying off the loan balance on the consumer's behalf. The consumer pays insurance premiums directly to the insurance company for this coverage. This case does not concern GAP insurance.

14. Instead, this case concerns GAP Waivers. GAP Waivers were developed as an alternative to GAP Insurance. Unlike GAP Insurance, GAP Waivers are a "debt cancellation agreement" rather than insurance, because with a GAP Waiver, the creditor agrees to write off the "gap" in the event of a "total loss" or if the vehicle is stolen and the insurance proceeds are insufficient to pay off the loan. The development of GAP Waivers have generally allowed the automobile industry to circumvent insurance regulations and licensing requirements while offering what is only a slightly modified version of GAP insurance.

15. To obtain a GAP Waiver, the consumer and the vehicle seller, or dealer, execute a GAP Waiver form. The GAP Waiver forms are form contracts that are offered to consumers on a take-it-or-leave-it basis. The Gap Waiver form provides that if a consumer suffers a total loss, and the insurance payout for the vehicle is insufficient to pay off the remaining loan balance, then the creditor on the car financing agreement will agree to waive the difference, provided the consumer pays a fee.

16. These GAP fees are included as a separate line item in the vehicle purchase finance agreement and are incrementally paid in monthly installments by the consumer over the life of the loan, with interest, along with the rest of the purchase price of the vehicle.

17. Importantly, every USAlliance GAP Waiver Addendum provides that if the car finance agreement is paid off prior to the end of the full loan term, then the GAP Waiver Addendum will terminate, and the consumer is entitled to a refund of the unused portion of the GAP fees. Such a provision makes sense: consumers should not have to pay for a service they no longer need and derive no benefit from.

18. For example, if the total GAP fees for four years of GAP coverage are $1,000, but the consumer pays off their finance agreement in two years, then the consumer would be entitled to a $500 refund for the unused half of their GAP coverage. These GAP fees are considered "unearned" because once the finance agreement is paid off early, there is no possibility of a GAP and thus the consumer does not receive anything of value by paying for the GAP protection.

**B.     USAlliance's Role as the Creditor on Finance Agreements with GAP Waivers**

19. As noted above, the consumer initially enters the vehicle purchase finance agreement and GAP Waiver with the dealer—who is the initial "creditor" on the loan. But the dealer then sells and assigns the finance agreement with the GAP Waiver to a financial institution, like USAlliance. Thereafter, the consumer's payments and interactions concerning the finance agreement are with USAlliance. Once USAlliance purchases the finance agreement and GAP Waiver, USAlliance becomes the "creditor" on the loan, legally assuming the benefits and contractual obligations under the finance agreement and GAP Waiver. This includes the obligation to refund any unearned GAP fees it collects because of the early termination of the finance agreement.

20. In this case, Plaintiff purchased her vehicle from Concierge Auto Brokers & Leasing located in Frankfort, Illinois.

21. It is apparent from the vehicle financing agreement whether the consumer purchased a GAP Waiver. The front page of the financing agreement generally indicates if it includes a GAP Waiver, and the agreement will also separately list the total amount of the GAP fees in a breakdown of the amount being financed by the consumer. USAlliance also receives a copy of the consumer's finance agreement and GAP Waiver Addendum agreement from the dealer. As a result, USAlliance knows which financing agreements have GAP Waiver Addendums.

22. Throughout the term of the loan, the payoff amount includes the remaining cost of the GAP Waiver Addendum, which is included in the aggregate amount financed by the consumer when they purchase the vehicle. Thus, when a consumer prepays their vehicle loans in full, the total payoff amount to USAlliance includes the full remaining cost of the GAP Waiver Addendum, even though the consumer derives no benefit from paying that cost. USAlliance then fails to provide any credit or refund for the unearned GAP Waiver Addendum fees, despite knowing that those fees are unearned because the consumer prepaid their loan and terminated the financing agreement.

23. USAlliance knows consumers are entitled to a refund of unearned GAP fees when they pay off their finance agreement early, but it collects the unearned GAP fees anyway. This has enabled USAlliance to collect and keep millions of dollars in unearned GAP fees that rightfully belong to their consumers.

### C. Plaintiff's GAP Waiver Addendum with USAlliance

24. On January 13, 2017, Plaintiff purchased a used 2016 Hyundai Sonata, VIN 5NPE24AF5GH318526, (the "Vehicle") from a dealer, Concierge Auto Brokers & Leasing,

7

located in Frankfort, Illinois. Ms. Asberry is listed as the Vehicle's buyer on the Retail Installment Sale Contract, (the "Contract").

25.     Ms. Asberry purchased the Vehicle for a total sale price of $24,446.40, paying $1,500.00 down. The total amount financed was $13,250.00 with an interest rate of 5.99% APR, paid over 72 months beginning on February 6, 2018. Thus, the loan term was set to end on approximately February 6, 2024[1].

26.     As part of the Contract, Ms. Asberry purchased the optional GAP Waiver Addendum for a total of $695.00. That $695.00 was included in the total finance amount.

27.     The GAP Waiver Addendum stated that "This Guaranteed Asset Protection Contract (GAP Addendum) amends the financing contract. This GAP Addendum is between the customer/borrower (I, you, your) and the dealer/creditor (we, us, our), or if assigned with the assignee. Although not required to do so, you have elected to participate in our GAP program." Ms. Asberry signed this portion of the Contract, agreeing to purchase the voluntary GAP Waiver Addendum.

28.     The dealer, Concierge Auto Brokers & Leasing, then assigned the financing agreement and GAP Addendum to USAlliance. Thus, Concierge Auto Brokers & Leasing is no longer a party to the agreement. And the GAP Waiver Addendum that Ms. Asberry purchased was provided by USAlliance.

29.     The GAP Waiver Addendum also provides that the contract will terminate at the request of the purchaser, including "upon payment in full of the financing contract." The GAP Waiver Addendum unequivocally states:

---

[1]     Before Ms. Asberry refinanced the loan, the total initial amount financed at the time of purchase was $14,793.55 with an interest rate of 15.49% APR, paid over 72 months at $318.70 per month beginning on February 27, 2017.

TERMINATION OF ADDENDUM: This GAP Addendum will terminate on the date that either of the following events occur: 1) the date your financing contract is scheduled to terminate; 2) upon payment in full of the financing contract; 3) expiration of any redemption period following the repossession or surrender of the covered vehicle; 4) in the event of a constructive total loss or theft of the covered vehicle; or 5) the date the financing contract is prepaid or the financing contract is refinanced. It is your responsibility to notify us, in writing, of your request to cancel this coverage and to request a refund/credit of the GAP charge.

30. Thus, the GAP Waiver Addendum required USAlliance to refund the unearned GAP fees to Ms. Asberry.

31. On approximately July 22, 2021, Ms. Asberry paid off the remaining balance on her Vehicle loan, thereby satisfying the Contract in full and cancelling the GAP Waiver Addendum contract before the full term of the loan had passed.

32. USAlliance knew and/or had reasonable notice that the GAP Waiver Addendum had terminated on or about July 22, 2021 when it mailed Ms. Asberry the payoff letter confirming that her Vehicle loan had been paid in full and the lien had been released.

33. But despite prepaying the Contract in full approximately 30 months early, Ms. Asberry did not receive a refund of a pro rata share of the $695.00 GAP charge.

34. As a result, USAlliance wrongfully retained unearned GAP fees of approximately $290 from Ms. Asberry.

**CLASS ACTION ALLEGATIONS**

35. Plaintiff brings this action on behalf of herself and as a class action under Rule 23(a) of the Federal Rules of Civil Procedure, on behalf of the following class of consumers (the "Nationwide Class"):

> All persons who, during the applicable statute of limitations, entered into finance agreements with GAP Waiver Addendums that were assigned to USAlliance and who paid off their finance agreements before the end of the loan term but did not receive a refund of unearned GAP fees.

9

36. Plaintiff also brings this action on behalf of herself and as a class action under Rule 23(a) of the Federal Rules of Civil Procedure, on behalf of the following class of consumers (the "Pennsylvania Subclass"):

> All persons from the State of Pennsylvania who, during the applicable statute of limitations, entered into finance agreements with GAP Waiver Addendums that were assigned to USAlliance and who paid off their finance agreements before the end of the loan term but did not receive a refund of unearned GAP fees.

37. Plaintiff also brings this action on behalf of herself and class under Rule 23(a) of the Federal Rules of Civil Procedure, on behalf of the following class of consumers (the "New York Subclass"):

> All persons from the State of New York who, during the applicable statute of limitations, entered into finance agreements with GAP Waiver Addendums that were assigned to USAlliance and who paid off their finance agreements before the end of the loan term but did not receive a refund of unearned GAP fees.

38. The aforementioned Nationwide Class, the Pennsylvania Subclass, and the New York Subclass are referred to herein as the "Class."

39. Excluded from the proposed Class are: (a) Defendants and their agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel representing Plaintiff and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

40. Plaintiff reserves the right to revise the definition of the Class based upon subsequently discovered information.

41. The members of the proposed Class are so numerous that joinder of all members would be impractical. The proposed Class likely contain thousands of members. The precise number of class members can be ascertained through discovery, which will include USAlliance's records.

42. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff

and members of the Class have been injured by the same wrongful practices of USAlliance. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

43. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor her attorneys have any interests contrary to or in conflict with the Class.

44. There are common questions of law and fact that predominate over any questions affecting only individual members of the Class, including:

   a. Whether USAlliance had a policy or practice of failing to refund unearned GAP Waiver Addendum fees on finance agreements assigned to USAlliance;

   b. Whether USAlliance breached its contract with Plaintiff and the Class by failing to refund unearned GAP Waiver Addendum fees;

   c. Whether USAlliance was unjustly enriched;

   d. Whether USAlliance violated state consumer protection statutes;

   e. The damages to which Plaintiff and the class are entitled.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically infeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual

litigation of such cases. Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized actions would result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and the court system because that would result from multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

46. USAlliance has, or has access to, contact information for members of the Class which may be used for the purpose of providing notice of the pendency of this action.

## CAUSES OF ACTION

### COUNT ONE
### BREACH OF CONTRACT INCLUDING BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
**(On Behalf of Plaintiff and the Nationwide Class or, in the alternative, the Pennsylvania and New York Subclasses)**

47. Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein.

48. Plaintiff and members of the Class entered into finance agreements with GAP Waiver Addendums that were assigned to USAlliance.

49. USAlliance breached the terms of the contract when it assessed and failed to refund Plaintiff and the Class unearned GAP fees.

50. Further, under the law of each of the states where USAlliance does business, an implied covenant of good faith and fair dealing governs every contract. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

51. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

52. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

53. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

54. Defendant breached the covenant of good faith and fair dealing when it assessed and collected and failed to refund unearned GAP fees.

55. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

56. Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to the contract.

57. Lest there be any doubt, by way of this Complaint, Plaintiff hereby provides notice on behalf of herself and the putative class of her and class members' right to receive a refund under the contract.

58. USAlliance has therefore received written notice that Plaintiff and the members of the Class paid off their finance agreements early, thereby entitling them to a refund of any unearned GAP fees.

59. Plaintiff and the members of the Class were harmed because USAlliance failed to

refund the unearned GAP fees after the early payoff of the finance agreements and failed to pay the interest that accrued on those unpaid amounts.

60.     USAlliance is liable to Plaintiff and the members of the Class for the damages they suffered as a direct result of USAlliance's collection and failure to promptly refund the unearned GAP fees, as well as the interest that accrued on those unpaid amounts.

## COUNT TWO
### VIOLATION OF UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW, 73 Pennsylvania Statute §§ 201-1, *et seq.*, ("UTPCPL")
### (On Behalf of Plaintiff and the Pennsylvania Subclass)

61.     Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein.

62.     This cause of action is brought under Pennsylvania's Unfair Trade Practices & Consumer Protection Law ("UTPCPL"), Title 73 of Pennsylvania Statute §§ 201-1, *et seq.*

63.     The sale and purchase of Defendant's GAP Waiver meets the definition of "trade" and "commerce" within the meaning of 73 P.S. § 201-2(3).

64.     Defendant violated and continues to violate the UTPCPL in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the GAP Waiver, by:

   a. "Representing that…services have…characteristics…that they do not have," § 201-2(4)(v); and

   b. "Advertising…services with intent not to sell them as advertised," § 201-2(4)(ix).

65.     USAlliance continues to violate the UTPCPL and continues to injure the public by misleading consumers about its GAP fees and by failing to refund unearned GAP fees.

66.     Had Plaintiff and the Pennsylvania Subclass known that USAlliance would not refund unearned GAP fees when the finance agreement was paid off early, they would not have

purchased the GAP Waiver at all and/or would have paid less for it.

67. Defendant's business practices have misled Plaintiff and the proposed Pennsylvania Subclass and will continue to mislead them in the future.

68. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and the Pennsylvania Subclass members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Pennsylvania Subclass members that they continue overpaying Defendant.

69. Plaintiff also seeks injunctive relief on behalf of the general public to prevent USAlliance from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the Pennsylvania Subclass members, and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

## COUNT THREE
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW,
N.Y. Gen. Bus. Law § 349, *et seq.* ("NYGBL")
(On Behalf of Plaintiff and the New York Subclass)

70. Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein.

71. This cause of action is brought under New York's General Business Law § 349, *et seq.* ("NYGBL").

72. USAlliance engaged in deceptive acts or practices relating to its failure to refund GAP fees to consumers in accordance with the representations made in its GAP Waiver Addendum, in violation of NYGBL § 349(a).

73. NYGBL § 349(a) prohibits Defendant from engaging in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"

74. USAlliance engaged in consumer-oriented conduct because Defendant's GAP Waiver Addendums were directed at offering financing services for consumers and thereby affect the general public.

75. USAlliance engaged in deceptive acts and practices in violation of NYGBL by materially misleading consumers about its GAP fees and by failing to refund unearned GAP fees in accordance with representations made in its GAP Waiver Addendum.

76. As a result of USAlliance's deceptive acts and practices in failing to refund consumers unearned GAP fees, Plaintiff and the Class suffered injury in the form of unearned GAP fees, would not have suffered such injury but for Defendant's deceptive policies and practices pertaining to its GAP Waiver Addendum, and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to New York Subclass members in that they continue overpaying Defendant.

77. Accordingly, Plaintiff and the New York Subclass members seek relief under NYGBL § 349(h) including, but not limited to, actual damages, treble damages, statutory damages, and/or attorneys' fees and costs.

78. Plaintiff also seeks injunctive relief on behalf of the general public to prevent USAlliance from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the New York Subclass members, and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

**COUNT FOUR**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class or, in the alternative, the Pennsylvania and New York Subclasses)**

79. Plaintiff hereby repeats, realleges, and incorporates by reference each and every

allegation contained above as though fully set forth herein.

80. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

81. Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant unearned GAP fees.

82. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

83. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

84. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself and the Class seeks judgment in an amount to be determined at trial, as follows:

(a) For public injunctive relief, enjoining Defendant from continuing the unlawful practices set forth above;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For punitive damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all claims so triable.


Dated: September 10, 2021

                                          */s/ Andrew Shamis*
                                          Andrew J. Shamis, Esq.
                                          **SHAMIS & GENTILE, P.A.**
                                          New York Bar No. 5195185
                                          ashamis@shamisgentile.com
                                          14 NE 1st Ave., Suite 705
                                          Miami, Florida 33132
                                          Telephone: 305-479-2299